**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 02: 05-cr- 0219 |
| | ) | 02: 09-cv-0529 |
| THOMAS EDWARD THROCKMORTON | ) | |

**MEMORANDUM OPINION AND ORDER**

October 22, 2009

      Presently before the Court for disposition is the MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY filed *pro se* by Petitioner / Defendant Thomas Edward Throckmorton ("Throckmorton") (*Document No. 106*), the RESPONSE in opposition filed by the government (*Document No. 114*), and the REPLY filed by Throckmorton, *pro se* (*Document No. 121*).  For the reasons discussed below, the Court will deny the § 2255 motion without holding an evidentiary hearing.

      The relief sought under 28 U.S.C. § 2255 is reserved for extraordinary circumstances.  *See Brecht v. Abrahamson*, 507 U.S. 619 (1993).  Section 2255 provides, in relevant part:

> A prisoner in custody under sentence of a [federal] court ... claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Although § 2255 includes a provision for a prompt evidentiary hearing, a federal court may deny a § 2255 motion without holding an evidentiary hearing if the "motion and the files and

records of the case conclusively show" that the petitioner is not entitled to relief.  28 U.S.C. §

2255 ; *see also United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005); *United States v.*

*McCoy*, 410 F.3d 124, 131 (3d Cir. 2005); Rule 8(a), 28 U.S.C. foll. § 2255.


### Procedural and Factual Background

The parties and the Court are familiar with the extensive background facts of

Throckmorton's criminal prosecution, conviction, and sentence.  Therefore, the Court will not

detail the facts again.  However, the following is a brief recitation of the procedural facts salient

to the issues presently pending before the Court.

On July 26, 2005, a federal grand jury in the Western District of Pennsylvania

returned a one-count indictment in which Throckmorton was charged with possession with

intent to distribute in excess of 100 kilograms or more of a mixture and substance containing a

detectable amount of marijuana in violation of Title 21, United States Code, Sections 841(a)(1)

and 841(b)(1)(B)(vii).

On August 16, 2005, Defendant, with counsel, appeared at an arraignment and pled

Not Guilty to the charge.   Attorney Charles F. Bowers, III, of the law firm Bowers & Ross,

Ambridge, PA, entered his appearance on behalf of Defendant that same day.

On September 28, 2005, Defendant, through counsel, filed an omnibus pretrial

motion, which included motions for discovery (including release of Brady material), a bill of

particulars, notice of the Government's intention to introduce uncharged misconduct, to

preclude audio recordings as inaudible, to suppress all items seized from the search of

Defendant's business and residence, to suppress all items seized from the 1988 GMC 2500 3/4

ton truck, for an Order directing officer / agents to retain rough notes, and to suppress audio tapes.   See Document No. 17.   The government filed a response to the omnibus motion on November 14, 2005.  *See* Document No. 23.

On November 15, 2005, the Court held an evidentiary hearing on Throckmorton's omnibus motion.  At that hearing, Throckmorton withdrew his motion to suppress all items seized from the search of his residence.  At the hearing, Defendant was represented by Attorneys James J. Ross and Charles F. Bowers, III, of the law firm Bowers and Ross, Ambridge, Pennsylvania.

On December 21, 2005, the Court denied Defendant's suppression motions and denied the other motions contained in the omnibus pretrial motion, with the exception of Defendant's request to require the government to give notice of its intent to introduce evidence of uncharged misconduct and the request that government agents be required to retain their rough notes.  *See* Document No. 26, 27, and 28.

A pretrial conference was conducted on January 9, 2006, at which time the case was scheduled for jury trial on February 13, 2006.  At the request of Defendant, the scheduled trial date was continued until March 10, 2006.  *See* Document No. 31.

On March 7, 2006, Attorney Paul D. Boas entered his appearance on behalf of Defendant.  On that same day, Attorney Boas moved to postpone and/or reschedule the trial. On March 8, 2006, the Court granted the request and the jury selection and trial were rescheduled to April 24, 2006.

On March 21, 2006, Attorneys Ross and Bowers filed a Motion to Withdraw as Attorneys, which was granted by Text Order on March 22, 2006. *See* Document No. 52 and Text Order of 3/22/06.

On April 21, 2006, Defendant, through counsel, filed additional pretrial motions, including a motion for reconsideration of exclusion of tapes based on inaudibility. *See* Document Nos. 57, 58, and 60. The motion was denied by the Court on April 25, 2006. The Court informed all counsel that it would give the jury a curative instruction before it was provided a copy of the transcript and that the transcript would be retrieved from the jury after the recording had been played. *See* Transcript of Jury Trial, April 25, 2006, at 8-9 (Document No. 93).

Jury selection and voir dire commenced on April 24, 2006. On April 28, 2006, after a four-day trial, a federal jury found Throckmorton Guilty Beyond A Reasonable Doubt as to the single-count indictment.

A sentencing hearing was conducted on August 14, 2006, at which Throckmorton was sentenced to a term of imprisonment of 87 months, to be followed by 5 years of supervised release. Judgment was entered the following day. *See* Document No. 81.

On August 18, 2006, Throckmorton, through counsel, filed a timely notice of appeal, in which he raised the following five issues:

(i) whether the district court erred in failing to instruct the jury on a lesser included offense that was not charged in indictment;

(ii) whether the district court erred in not instructing the jury that George Gailey was Throckmorton's accomplice;

4

(iii) whether the district court erred in prohibiting Throckmorton from cross-examining the government's cooperating accomplice witness, Robert Gailey, about the possibility of receiving a sentence reduction;

(iv) whether the district court erred in allowing the government's witness to give expert opinion about "owe" sheets;" and

(v) whether the district court erred in providing the jury with an unofficial transcript of the audiotapes.

*See* Attachment A, Motion Under 28 U.S.C. § 2255, at 3.

On March 18, 2008, the United States Court of Appeals for the Third Circuit affirmed Throckmorton's conviction and sentence.   The appellate court found that the trial court erred when it permitted the government's witness to opine on the general format of an owe-sheet and that the district court erred when it refused to permit Throckmorton's attorney to cross-examine Robert Gailey about the period of incarceration he would be facing had he not cooperated with the authorities.   However, the appellate court found as follows:

> [W]e can say with confidence that both errors were harmless in the context of the record as a whole.  The evidence was overwhelming.  Throckmorton had accepted delivery of 233 pounds of marijuana, and while doing do, was caught on tape having an extensive discussion about the trafficking operation.  Further, at trial, not only did Robert Gailey testify to Throckmorton's involvement, so did his brother George, who had seen evidence of the operation first-hand.  Accordingly, we have no doubt that the jury's verdict would remain the same even in the absence of these errors, and therefore conclude that they were harmless.

Opinion, Filed March 18, 2008.

On May 14, 2008, Throckmorton's petition for rehearing was denied and the mandate issued on May 22, 2008.  On May 1, 2009, Throckmorton timely filed the instant

motion in which he raises eight (8) claims of ineffective assistance of counsel against his trial and appellate attorney, Paul D. Boas.

## Evidentiary Hearing

Under 28 U.S.C. § 2255, a judge must determine whether to summarily dismiss the petition under Rule 4(b) of the Rules Governing § 2255 Proceedings ("If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party."), or to order an evidentiary hearing under Rule 8 of the Rules Governing § 2255 Proceedings.

A district court should hold an evidentiary hearing in section 2255 cases unless "the motion, files and records show conclusively that the movant is not entitled to relief." *United States v. Nahodil*, 36 F.3d 323 (3d Cir. 1994). In deciding whether to hold a hearing, a judge may draw upon personal knowledge and recollection of the events that occurred in his or her presence. *See Government of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1077 (3d Cir. 1985).

After reviewing the filings in this case, the record, and drawing upon the Court's personal knowledge and recollection of the events that occurred in its presence, the Court finds that an evidentiary hearing is not required because Throckmorton has failed to raise any genuine issue of material fact. *See United States v. Essig*, 10 F.3d 968, 976 (3d Cir. 1993). Additionally, the files and records of the case conclusively establish that Throckmorton is not entitled to relief. *United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005); *United States v.*

*McCoy*, 410 F.3d 124, 131 (3d Cir. 2005).  Therefore, the Court will proceed to the merits of the § 2255 motion.[1]


### Standard of Review

All of Petitioner's claims assert the ineffectiveness of his counsel, Paul D. Boas, both during the trial and on appeal.   The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel and exists "in order to protect the fundamental right to a fair trial."  *Lockhart v. Fretwall*, 506 U.S. 364, 368 (1993) (*quoting Strickland v. Washington*, 466 U.S. 668, 684 (1984)).

The United States Supreme Court has formulated a two-part test for determining whether counsel rendered constitutionally ineffective assistance:  (i) whether counsel's performance was unreasonable; and (ii) whether counsel's unreasonable performance actually prejudiced the defense.  *Strickland,* 466 U.S. at 687.  To determine whether counsel performed below the level expected from a reasonably competent attorney, it is necessary to judge counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's conduct.  *Id.*  at 690.  A petitioner who claims that he or she was denied effective assistance of counsel carries the burden of proof.  *United States v. Cronic*, 466 U.S. 648, 658 (1984).

The first prong of the *Strickland* test requires that a defendant establish that his attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as "counsel" guaranteed by the Sixth

---

[1] "When a motion is made under § 2255, the question of whether to order a hearing is committed to the sound discretion of the district court."  *United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992).

Amendment. *Strickland*, 466 U.S. at 688. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the totality of the circumstances, the challenged action "might be considered sound trial strategy." *Id*. at 689. The question is not whether the defense was free from errors of judgment, but whether counsel exercised the customary skill and knowledge that normally prevailed at the time and place. *Id.*

The second prong requires a defendant to demonstrate that counsel's errors deprived him of a fair trial and the result was unfair or reliable. *Id*. To prove prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 694. A "reasonable probability" is one that is sufficient to undermine confidence in the outcome. *Id.*

The Court of Appeals for the Third Circuit has endorsed the practical suggestion in *Strickland* to consider the prejudice prong before examining the performance prong "because this course of action is less burdensome to defense counsel." *United States v. McCoy*, 410 F.3d 124, 132 n.6 (3d Cir. 2005); *see Strickland*, 466 U.S. at 694 (stating that, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so," the prejudice prong should be examined before the performance prong "to ensure that ineffectiveness claims do not become so burdensome to defense counsel that the entire criminal justice system suffers as a result").

Furthermore, the United States Supreme Court has determined that under the *Strickland* test, a reviewing court must "assess counsel's overall performance throughout the case to determine whether the 'identified acts or omissions' overcome the presumption  that

8

counsel rendered reasonable professional performance." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).


## Discussion

As stated *supra,* all of Throckmorton's claims involve the alleged ineffectiveness of his counsel.  Throckmorton claims that his trial and appellate counsel, Paul D. Boas, was constitutionally ineffective for a myriad of reasons, many of which overlap.

As both this Court and the United States Court of Appeals for the Third Circuit observed, the evidence of Defendant's guilt in this case was overwhelming.  The evidence presented a clear situation in which Throckmorton had accepted delivery of 233 pounds of marijuana, and while doing do, was caught on tape having an extensive discussion about the trafficking operation.  Further, at trial, not only did Robert Gailey testify to Throckmorton's involvement, so did his brother George Gailey, who also had seen evidence of the drug trafficking operation first-hand.

While the Court is of the opinion that the § 2255 could be disposed of on the strength of the evidence adduced at trial alone, in an abundance of caution, the Court will address seriatim each of Throckmorton's specific claims of ineffective assistance of counsel.


**1.     "Counsel failed to introduce a Critical Document 'Appraisal Mobile Plasma Torch Heating System' into evidence."**

Through Robert Gailey's trial testimony, the government presented evidence and testimony to show that Throckmorton did not have a successful metal fabricating business.  The purpose of such testimony was to show the jury Throckmorton's sources of legitimate income

versus illegitimate income and how Throckmorton was able to purchase marijuana for resale.

Throckmorton alleges that had a "critical document," the Appraisal Mobile Plasma Torch Heating System, been introduced into evidence, it would have proven that he was working on a legitimate plasma torch project, which would have contradicted a portion of Robert Gailey's testimony.

This argument fails for a number of reasons.  First, the plasma torch project was - as the name implies - a project - it was never represented by Defendant to be an actual functioning income producing business.

Next, the document may only have served to contradict a statement made by Robert Gailey concerning Throckmorton's business dealings.  It would not contradict or affect the remainder of Gailey's testimony which detailed Throckmorton's drug trafficking operation.

Third, it is not at all clear that even if counsel had offered such a "critical document" into evidence, it would have been admitted.  The government would have objected to said document on the grounds of hearsay and relevance.   This alleged evidence of the plasma torch project was hearsay and simply not relevant to the drug charge filed against Throckmorton.

Finally, it cannot be ignored that evidence and testimony was presented to the jury by Defendant regarding the mobile plasma torch project.  Defendant called Dr. Jeffrey Ibbotson, who was responsible for the development of the plasma torch unit. Contrary to Throckmorton's allegations, the Court recalls that defense counsel was clearly knowledgeable about the plasma torch unit and was fully prepared in his presentation of the testimony of Dr. Ibbotson.

The Court finds that the first argument of Throckmorton is without merit and will be denied.

2.    **"Counsel failed to subpoena witness Robert Cody."**

According to Throckmorton, Robert Cody "would have testified that Throckmorton's mobile plasma torch was going to be used on several government contracts," that such testimony would have discredited Robert Gailey's testimony "that Throckmorton had no legitimate reasons to travel to Arizona for business purposes, and that such testimony "would have changed the outcome of the trial."  Br. at 12.

Throckmorton's claims about the purported testimony of Robert Cody are completely unsupported as he has offered no evidence to substantiate his claims that Robert Cody would have testified or to the subject matter upon which Robert Cody would have testified. Accordingly, the Court finds that the second argument of Throckmorton is without merit and will be denied.

3.    **"Counsel failed to call defense witness Dale Van Artsdalen and Matthew Grant."**

Post-conviction claims of uncalled witnesses are viewed with skepticism.  "Under the United States Constitution, trial counsel need not call every witness suggested to him." *United States v. Griffin*, 1993 WL 34927, at *5 (E. D. Pa. Feb. 9, 1993) (*citing United States v. Balzano*, 916 F.2d 1273, 1294 (7th Cir. 1990)).  Moreover, "[d]ecisions on which witnesses to call to testify are normally strategic decisions left to counsel."  *United States v. Merlino*, 2 F. Supp. 2d 647, 662 (E.D. Pa. 1997); *Griffin,* 1993 WL 34927, at *5 (citations omitted). Generally, the "expertise [of counsel] leads them to choose only those witnesses likely to assist the case." *United States v. Ciancaglini*, 945 F. Supp. 813, 823 (E.D. Pa. 1996). As such, the

decision of which witnesses to call "is precisely the type of strategic decision which the Court in *Strickland* held to be protected from second-guessing." *Id*.

"[W]here a [§ 2255 movant] claims his trial counsel failed to call a witness, he must make a specific showing as to what the evidence would have been, and prove that this witness's testimony would have produced a different result. Otherwise, the prejudice prong under *Strickland* is not satisfied." *United States v. Edwards*, No. Crim. 96-592, 2000 WL 572704, at *5 (E.D. Pa. May 8, 2000) (citations and internal quotation marks omitted).

By Defendant's own admission, both Van Artsdalen and Grant are marijuana users who had purchased marijuana from Robert Gailey. Accordingly, both would have been subjected to cross examination on, among other things, their purchase(s) of marijuana, their use of marijuana, and other illegal activities. The government argues that neither of these witnesses would have been helpful and, in fact, neither would have provided testimony inconsistent with Gailey's testimony.

Furthermore, Attorney Boas moved pretrial for defense witness immunity for Van Artsdalen and Grant, who both also worked for Defendant, and he sought court-ordered judicial immunity for the proposed testimony of these two defense witnesses. Judicial immunity is properly denied where the exculpatory nature of the proffered testimony is at best speculative. The Court found that although the proffered testimony of Van Artsdalen and/or Grant may be incriminating to Gailey and affect his credibility, the proffered testimony was not clearly exculpatory as it related to Defendant. Accordingly, defense counsel's motion for defense witness immunity was denied.

"There is a strong presumption that counsel's performance was reasonable." *Strickland,* 466 U.S. at 694.  "That is to say, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." The Court observes that defense counsel in this matter is quite experienced and well-known to the Court as an effective and conscientious advocate with over thirty (30) years of criminal defense trial experience at the time.  The Court finds that Throckmorton has failed to defeat the presumption that his counsel's decision to not call these witnesses was based on sound trial strategy.

Further, the Court finds that Defendant himself participated in the decision not to call Van Artsdalen together with his trial counsel.  In fact, in his Affidavit, defense counsel states that "[a]fter the A.U.S.A. cross-examined one of the witnesses, Mr. Zaluski, who I did call about his marijuana use, my client - who felt bad for the witness I did call and what he went through - suggested that maybe I should not call Van Artsdalen."  *See* Appendix, Affidavit of Attorney Boas, Exhibit D (Document No. 109).

Given the denial of judicial immunity followed by the strenuous cross examination of Mr. Zaluski by the government, defense counsel can hardly be criticized for not calling Dale Van Artsdalen and Matthew Grant as trial witnesses.  In fact, it appears to the Court that defense counsel exercised sound trial strategy in <u>not</u> calling these two witnesses during trial.

Accordingly, the Court finds that the third argument of Throckmorton is without merit and will be denied.

4.      **"Counsel was ineffective by stipulating to the quality and quantity of marijuana and by preventing Throckmorton's presence at side bar discussions.  Counsel also failed to object and challenge the superficial state police lab report."**

Throckmorton has failed to prove that his counsel was ineffective for stipulating to the quality and quantity of the marijuana which was seized.  A violation of sections 841(a)(1) and 841(b)(1)(B) of Title 21 of the United States Code does not depend on the purity or percentage of the controlled substances that the individual allegedly possesses.  Rather, those sections only require a particular type of controlled substance and a particular quantity.  *See* 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).   All parts of the marijuana plant, including the stalks and seeds, are considered for purposes of the statute.  *See* 21 U.S.C. 802(16) ("The term 'marihuana' means all parts of the plant . . . whether growing or not . . .the seeds thereof . . . ."). Whether the seized marijuana was of a poor quality due to the large chunks of stalks, stems and large quantity of seeds it contained would not have made a difference in Throckmorton's prosecution.  One would not expect an attorney to object to the purity of the marijuana and defense counsel's decision to not do so was clearly not unreasonable under the circumstances.

As to the quantity of the marijuana, based on a review of the record, and the Court's own personal recollection, the Court finds that defense counsel made all of the available arguments as to the quantity of the marijuana; however, the lab report was specific as to the net weight of the marijuana, which apparently did not include the packaging.

Throckmorton next alleges that his counsel was ineffective because he prevented Throckmorton from being present at side bar discussions.   It is the Court's recollection that Defendant waived his right to attend side bar conferences.  Nevertheless, undeniably, a defendant has a constitutional right to be present at every stage of his trial.  *United States v.*

*Toliver,* 330 F.3d 607, 611 (3d Cir. 2003). This right is also mandated by Federal Rule of

Criminal Procedure 43(a). However, "[t]he right to be present at every stage of trial does not

confer upon the defendant the right to be present at every conference at which a matter

pertinent to the case is discussed, or even at every conference with the trial judge at which a

matter relative to the case is discussed." *United States v. Vasquez,* 732 F.2d 846, 848 (11th Cir.

1984). As Defendant points out, his counsel requested a side bar when he was asked to

stipulate to the marijuana analysis and amount. Defendant argues that his counsel's "argument

at side bar was ineffective because he was unable to explain the correct way to analyze and

weigh the usable marijuana."

      The Court finds that it was not error for Defendant to have not participated in this

side bar discussion because, even assuming *arguendo* that his counsel's explanation was

somehow deficient, the Defendant himself would not have been able to meaningfully contribute

to the discussion. Throckmorton's presence at side bar was not necessary as his counsel ably

represented Throckmorton's interests. *See Kentucky v. Stincer*, 482 U.S. 730, 745 (1987) ("[A]

defendant is guaranteed the right to be present at any stage of the criminal proceeding that is

critical to its outcome if his presence would contribute to the fairness of the procedure.") Thus,

the Court finds that Throckmorton suffered no prejudice from not being in attendance at the

side bar discussion.

      Last, Throckmorton contends that his counsel was ineffective in his failure "to object

and challenge the Superficial [Pennsylvania State Police Bureau of ]Forensic Services lab

report." Br. at 16. Defendant contends that the lab report "lacks the prerequisite analysis that

would determine the net weight the marijuana not to include the heavy wrapping and other

material . . . ."  Br. at 17.   His argument that the lab report is superficial and/or lacks the prerequisite analysis is specious at best.  The government points out that the lab report was very specific as to the net weight of the marijuana and that the net weight did not include the packaging.  Govt's Response. at 26, ¶ 11.

Accordingly, the Court finds that the fourth argument of Throckmorton is without merit and will be denied.

**5.      "Counsel failed to subpoena defense witness Dennis Kelly."**

Throckmorton alleges that his trial counsel was ineffective because he failed to subpoena defense witness Dennis Kelly to refute the testimony of Robert Gailey.  According to Throckmorton, he conducted legitimate business with someone named Dennis Kelly from Indiana, and that the name "Kelly" with the number "10" written on a "post it note" located in Throckmorton's desk actually referred to Dennis Kelly, not to Kelly Fernald, Robert Gailey's girlfriend.   Trooper Walker testified that the note was an "owe sheet."

The name "Kelly" also appears in Government Exhibit 19, the Defendant's phonebook, along with a location of "Boston, Mass" and a telephone number bearing a Boston area code.  Additionally, Robert Gailey testified at trial that he had delivered ten (10) pounds of marijuana to his girlfriend, Kelly Fernald, who lived in Boston, Massachusetts.

Throckmorton makes a number of conclusory statements as to how Dennis Kelly would have helped him at trial, i.e., "had counsel not failed to subpoena Dennis Kelly, the conviction would not have transpired in light of all the other defense witnesses' testimony, which would have impeached Robert Gailey's testimony."  Br. at 20.

However, had Dennis Kelly testified at trial in the manner alleged by Defendant, the jury still would have been left to decide who they believed concerning a matter that was not pivotal in this trial.  There is absolutely no support for Defendant's conclusion that his conviction would not have transpired had Dennis Kelly testified.

As discussed *supra,* decisions on which witnesses to call to testify are normally strategic decisions left to counsel.  The Court finds that Throckmorton has failed to defeat the presumption that his counsel's decision not to call Dennis Kelly was based on sound trial strategy.

For all these reasons, the Court finds that the fifth argument of Throckmorton is without merit and will be denied.

**6.**      **"Trial counsel failed to motion for judgment of acquittal to dismiss the indictment because there was no transfer of possession as charged."**

This claim can be dismissed rather summarily because the record completely belies Throckmorton's allegation.   On April 25, 2006, at the close of the government's case, counsel for Throckmorton clearly moved for a judgment of acquittal not only "on the in excess of a hundred kilogram aspect of the case" but also "on all the evidence."  *See* Transcript of Jury Trial, April 25, 2006 (Document No. 92).  In fact, counsel specifically addressed the issue of "possession," as follows:

> MR. BOAS:   I make a general motion based on all the evidence there is insufficient evidence - - we haven't even heard about him being arrested.  All we know is he is here today.  There is no evidence that he ever claimed his stuff or ever took possession of it, that he ever approached the truck.  The last we heard is he is in that room talking to everybody.

17

The case is not conspiracy, Your Honor.  There is no conspiracy charge.  It's possession with intent to deliver, and it's either actual or constructive possession.  <u>Clearly, this is no actual possession.  He never was anywhere near the stuff based on the testimony we heard in Court.  We didn't hear he got in the truck and started to unload it, and they arrested him.</u>  We just know he is indicted.

THE COURT: We know that the truck was delivered to his house.

MR. BOAS:    Right, but we don't know that it ever got there.  Without a conspiracy charge, <u>I don't feel they can prove he actually possessed the stuff.  That is an element of the crime.  I don't see him possessing it in the Western District or elsewhere</u>.

*See* Transcript of Jury Trial, April 25, 2006 (Document No. 92 at 64-68) (emphasis added).

The motion for a judgment of acquittal was denied by the Court and defense counsel proceeded to call his first witness.  *Id.* at 68.

Throckmorton also contends that "trial counsel also failed to appeal the defects in the lab report submitted by the government."  Br. at 22.  As discussed *supra*, Throckmorton however, has offered no evidence to substantiate his claim that the lab report contained defects.  Defense counsel is not ineffective for failing to bring frivolous claims.  *United States v. Benish*, 5 F.3d 20, 25 (3d Cir. 1993).

Accordingly, the Court finds that the sixth argument of Throckmorton is without merit and will be denied.

7.    **"Counsel rendered ineffective assistance of counsel on appeal in failing to pursue the suppression issue to the Court of Appeals."**

To show that appellate counsel was deficient under *Strickland*, a defendant must do more than show that counsel failed to raise every non-frivolous issue, for an appellate counsel is under no obligation to raise all issues, but may pick and choose so as to maximize the

18

chances of a successful appeal. *Smith v. Robbins*, 528 U.S. 259, 288 (2000). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance be overcome." *Id.*  To establish prejudice on a claim for ineffective assistance of counsel, the defendant must show that "there is a reasonable probability that the result of the appeal would have been different had counsel's stewardship not fallen below the required standard." *United States v. Mannino*, 212 F.3d 835, 845 (3d Cir. 2000) (emphasis in original).

On September 28, 2005, Attorneys Ross and Bowers[2] filed on behalf of Defendant, *inter alia,* three (3) motions to suppress: Motion to Suppress All Items Seized From The Search of Defendant's Business Located at 1001 Merchant Street Ambridge, Pennsylvania (Document No. 17-5), Motion to Suppress All Items Seized From The Search of Defendant's Residence Located at 2925 Ridge Road Extension Baden, Pennsylvania (Document No. 17-6), and Motion to Suppress All Items Seized From the 1988 GMC 2500 3/4 Ton Truck Registered to Industrial Construction Enterprise (Document. 17-7).

On November 15, 2005, the Court conducted an evidentiary hearing on the suppression motions.  Prior to the commencement of the hearing, Defendant orally withdrew his Motion to Suppress all items seized from his residence.  *See* Text Minute Entry, November 15, 2005.  Accordingly, the evidentiary hearing proceeded as scheduled on the motions to suppress all items seized from Throckmorton's business and the GMC truck.  At the conclusion

---

[2]     Attorneys Ross and Bowers represented Throckmorton from his initial arrest, arraignment and during the suppression hearing.  *See* Declaration of Attorney James J. Ross, Document No. 109, Exhibit C.  Attorney Boas represented Throckmorton for a limited period of time pre-trial, during trial, and on appeal.  *See* Declaration of Attorney Paul D. Boas, Document No. 109, Exhibit D.

of the hearing, the motions were taken under advisement and by Memorandum Opinions dated December 21, 2006, the Court denied both motions. *See* Document Nos. 27 and 28.

With respect to the Motion to Suppress All Items Seized from the Search of Defendant's Business, the Court concluded that the facts set forth in the affidavit, along with the monitored telephone call between Gailey and Throckmorton and the monitored face-to-face conversation between Gailey and Throckmorton were sufficient to establish a fair probability that Gailey's allegations with respect to Throckmorton's illegal drug activities were truthful and that evidence of Throckmorton's drug dealing would be found at his business. Accordingly, the Court found that that Magisterial District Judge who issued the search warrant had a substantial basis for concluding that probable cause existed.

Throckmorton contends that the items seized from his business were personal in nature and "any reasonable person would consider personal property" to be "protected by the Fourth Amendment.[3]   The Court finds Throckmorton's argument to be without merit and can be dismissed rather summarily.  Throckmorton's business was searched pursuant to a valid Search Warrant, which specifically described, *inter alia,* the following items to be searched for and seized: "1.  Documents to include indicia of occupancy.  The documents are to include, but not limited to, bank statements, bank accounts, additional properties owned by THROCKMORTON or his company Industrial Construction Enterprise. "   The seized

---

[3]     In its Response to the § 2255 motion, the Government did not address the issue of whether counsel was ineffective for not appealing the Memorandum Opinion and Order which denied the motion to suppress all items seized from Defendant's business.

telephone book, address book and note pad are all indicia of occupancy and were properly seized pursuant to a valid Search Warrant.

As to the Motion to Suppress All Items Seized from the 1988 GMC Truck, the Court concluded that the initial stop of Robert Gailey and the 1988 GMC truck by Deputy Sheriff Pracht was justified by Pracht's personal observation that Gailey had committed a traffic violation.  During the course of the traffic stop, Deputy Sheriff Pracht made a number of observations that provided reasonable suspicion to expand his inquiry beyond the original scope of the traffic stop.  After diligently conducting a proper investigation to confirm his initial suspicion that Gailey was involved in the transportation of illegal drugs, including the narcotics alert by the police dog, Deputy Sheriff Pracht took Gailey into custody and properly seized the truck.  Throckmorton contends that "the district court abused its discretion when it denied his suppression motion during the pretrial period." Br. at 23.  The government responds that Throckmorton did not have standing to challenge the traffic stop and, therefore, would not have been able to raise such a claim on appeal.[4]

As noted *supra*, on appeal, counsel for Throckmorton raised five (5) issues. The failure to appeal a particular issue does not *per se* amount to representation falling below an objective standard of reasonableness.  For example, counsel may decide to present only his

---

[4]     In its initial response to the Motion to Suppress, the government also argued that Throckmorton did not have standing to challenge the search and seizure of the GMC truck. The Court rejected that argument then and stands by its original decision.  As explained in the Memorandum Opinion, the truck in question was owned by Industrial Construction Enterprise, a company of which Throckmorton was the sole owner.  The Court found that Throckmorton had standing because (i) he had a proprietary or possessory interest in the truck and (ii) he had been charged with possession with intent to distribute the marijuana that was found in the truck. *See Brown v. United States*, 411 U.S. 223, 229 (1973).

strongest arguments and forego less likely to succeed or marginal claims in the interest of focus and clarity of advocacy. "Appealing losing issues 'runs the risk of burying good arguments . . . in a verbal mound made up of strong and weak contentions.'  Indeed, the 'process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.' " *Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996) (quoting *Smith v. Murray*, 477 U.S. 527, 536, (1986)).

The suppression of evidence motions were fully litigated.  The Court found that both the search and seizure of personal items from Defendant's business and the search and seizure of the GMC truck were reasonable.  Throckmorton has presented no evidence to establish that his counsel's decision not to raise the suppression issues on appeal was an unreasonable one.  Accordingly, the Court finds that Throckmorton has not overcome the presumption that counsel's failure to assert these issues on appeal was an exercise of sound appellate strategy.

Accordingly, the Court finds that the seventh argument of Throckmorton is without merit and will be denied.

8.      **"Trial counsel was ineffective because he did not prepare adequate argument against the prosecution's biased and doctored transcripts of selected conversation that took place in Throckmorton's office the day of his arrest."**

Throckmorton alleges that his counsel failed to properly challenge the transcripts of the taped conversations, "never identified the size of the room, the location of the furniture and the people and the nature of the conversations that were going on at the same time in that

room," and never challenged the "chain of custody to the tapes and whether they had been tampered with."

The record reflects that defense counsel challenged the transcripts and tapes on numerous occasions. Even on the eve of trial, defense counsel again filed a motion for reconsideration to exclude the tape recordings.

The jury was given copies of the transcripts with which to follow along as the tapes were played. The transcripts were taken back from the jury once the playing of the tapes ended. The Court cautioned the jury that the transcript was only a guide and that the recording was the evidence, not the transcript. The jury did not have the transcripts during deliberations. The Court emphasized that the jurors' interpretation of who was speaking and what was being said might be different from the government's transcript. The jury was further instructed that if there were differences in a juror's interpretation and the transcript, the juror should follow his or her own interpretation. Furthermore, the United States Court of Appeals found that the submission of the transcript as an aid to the jury under proper instruction was clearly permissible. Opinion, March 18, 2008, at n.2.

Additionally, the Court finds that the size of the room, the location of the furniture and the people and the nature of the conversations that were going on at the same time in that room was not relevant to a challenge to the accuracy of the transcripts of the tapes. Accordingly, one would not expect defense counsel to make such a challenge and defense counsel's decision not to do so was clearly not unreasonable under the circumstances.

Likewise, Defendant's argument that counsel was ineffective because he failed to challenge the chain of custody of the tapes is without merit. There were no abnormalities ever

at issue regarding the "chain of custody to the tapes and whether they had been tampered with" and, accordingly, there was no need for counsel to make such a challenge.

Therefore,  the Court finds that the eighth  argument of Throckmorton is without merit and will be denied.

## Conclusion

For the reasons stated, the Court will dismiss Petitioner's motion without an evidentiary hearing.  His unsupported allegations of ineffectiveness, without more, do not satisfy the standards set out in *Strickland v. Washington*, 466 U.S. 668, 690 (1984).

## Certificate of Appealability

Upon the denial of a section 2255 motion by the district court, an appeal to the Court of Appeals is not permitted unless the petitioner obtains a certificate of appealability from "a circuit justice or judge." 28 U.S.C. § 2253(c).  "At the time a final order denying a petition under 28 U.S.C. § 2255 is issued, the district judge shall make a determination as to whether a certificate of appealability should issue." United States Court of Appeals for the Third Circuit Local Appellate Rule 22.2.  The application for such a certification should therefore be made to the district court in the first instance.  *See United States v. Williams*, 158 F.3d 736, 742 n. 4 (3d Cir. 1998).

The law permits the issuance of a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order to establish the denial of a constitutional right, the mere allegation of a constitutional

wrong, such as deprivation of the rights to effective counsel, is insufficient; the petitioner must make a substantial showing of such an error in order to present an appeal.  *Santana v. United States*, 98 F.3d 752, 757 (3d Cir. 1996).  "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court finds that reasonable jurists would not find this Court's assessment of Defendant's claims debatable or wrong.  Thus, the Court will not issue a certificate of appealability.

An appropriate Order follows.

McVerry, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 02: 05-cr- 0219 |
| | ) | 02: 09-cv-0529 |
| THOMAS EDWARD THROCKMORTON | ) | |

**ORDER OF COURT**

AND NOW, this 22nd day of October, 2009, in accordance with the foregoing

Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** as follows:

1.      The Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct

Sentence by a Person in Federal Custody filed *pro se* by Petitioner Thomas Edward

Throckmorton is **DISMISSED** and the relief requested therein is **DENIED**; and

2.      A certificate of appealability is not granted because Petitioner, Thomas

Edward Throckmorton, has not made a substantial showing of the denial of a Constitutional

right.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc:      Thomas Edward Throckmorton
         Reg. No.: 08614-068
         FCI Fort Dix - East
         Unit 5702
         P. O. Box 2000
         Fort Dix, NJ 08640

         Almon S. Burke , Jr.,
         Assistant U.S. Attorney
         Email: almon.burke@usdoj.gov